## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

**LINDSEY LEMKE, JANE L.B. DOE, JANE A.P. DOE, JANE S.M. DOE, JANE B.M. DOE, JANE L.A. DOE, JANE H.H. DOE, JANE W.N. DOE, JANE H.B. DOE, JANE L.K. DOE, JANE J.S. DOE, JANE R.E. DOE** by next friend **JANE R.L. DOE, JANE B.A. DOE, JANE H.T. DOE, JANE M.W. DOE, JANE Y.A. DOE,** and **JANE S.J. DOE,**

     **Plaintiffs,**

**V**

**MICHIGAN STATE UNIVERSITY; THE BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY; LAWRENCE GERARD NASSAR (individual and official capacity); USA GYMNASTICS, INC.; and TWISTARS USA, INC. d/b/a GEDDERTS' TWISTARS GYMNASTICS CLUB USA,**

     **Defendants.**

**Case No.: 1:17-cv-00257**

**Hon. Gordon J. Quist**

**First Amended Complaint and Reliance on Jury Demand**

---

**James White (P56946)**
**John W. Fraser (P79908)**
**Alexander S. Rusek (P77581)**
White Law PLLC
Attorneys for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: jameswhite@whitelawpllc.com
E: johnfraser@whitelawpllc.com
E: alexrusek@whitelawpllc.com

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

**NOW COME** Plaintiffs, by and through their attorneys WHITE LAW PLLC, and hereby amend their Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) and allege and state as follows:

## I.   PRELIMINARY STATEMENT AND INTRODUCTION

1.   This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts, conduct, and omissions of Lawrence Nassar, D.O., Michigan State University ("MSU"), USA Gymnastics ("USAG"), and Twistars USA, Inc. ("Twistars") and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiffs, all female, many of whom were minors when the sexual assaults took place.

2.   Plaintiffs are or were young athletes participating in a variety of sports including gymnastics, track and field, and soccer.

3.   Defendant Nassar came highly recommended to Plaintiffs as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.   Plaintiffs and their parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.   From approximately 1996 to 2016 Defendant Nassar worked for Michigan State University in various positions and capacities.

6.   From 1986 to approximately 2015 Defendant Nassar also worked for USA Gymnastics in various positions and capacities.

7.  For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG and Twistars, who referred athletes to his care.

8.  To gain Plaintiffs' trust, at appointments, Defendant Nassar would give some Plaintiffs gifts.

9.  From approximately 1998 to 1999, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs Jane S.M. Doe and Jane W.N. Doe, who were minors at the time, by nonconsensual vaginal digital penetration and without the use of gloves or lubricant.

10. Plaintiffs Jane S.M. Doe and Jane W.N. Doe were seeking treatment for athletic injuries to their lower backs.

11. The assaults against Jane S.M. Doe and Jane W.N. Doe were carried out at MSU.

12. In 1997, under the guise of medical treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiff Jane S.J. Doe by nonconsensual vaginal digital penetration and without the use of gloves or lubricant.

13. Plaintiff Jane S.J. Doe was seeking treatment for athletic injuries to her lower back.

14. The assault against Plaintiff S.J. Doe was carried out at Disney's ESPN Wide World of Sports Complex in Orlando, Florida during a Junior Olympic Nationals meet, which was a USAG-sanctioned event.

15. From approximately 2009 to 2016, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiff Jane Y.A. Doe, who was a minor for a majority of the times, by nonconsensual vaginal and anal digital penetration and without the use of gloves or lubricant.

16. Plaintiff Jane Y.A. Doe was seeking treatment for athletic injuries to her lower back as well as for injuries that resulted from a disease that Plaintiff endures that affects her muscles and

tendons.

17.    The assaults against Plaintiff Y.A. Doe were carried out at MSU.

18.    In 1999, a MSU student athlete, reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

19.    In 2000, another MSU student athlete reported to trainers concerns about Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

20.    Many Plaintiffs were seen alone with only the individual Plaintiff and Defendant Nassar in the room, without chaperones or parents.

21.    At other times, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

22.    Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action, from 2000 to 2016, Plaintiffs, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by nonconsensual vaginal and anal digital penetration, nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant and by nonconsensual touching and groping of their breasts under the guise of treatment.

23.    While most victims were assaulted at MSU, other victims were assaulted at USAG sanctioned events, Twistars, and Defendant Nassar's home in Holt, Michigan.

24.    The ages of the Plaintiffs when assaulted ranged from approximately 10 to 34 years old.

25.    Additional complaints regarding Defendant Nassar's conduct surfaced in 2014. A victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast

and vaginal area, and became sexually aroused.[1]

26. Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity, and although the victim reported to Defendant MSU certain facts, some were omitted from the investigative report including but not limited to the following:

a. Defendant Nassar was sexually aroused while touching her;

b. The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

27. Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "[n]ot of a sexual nature."[2]

28. Following the investigation, upon information and belief Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[3]

29. Defendant Nassar continued to treat patients alone.

30. Following the investigation, between approximately 2014 and 2016, Plaintiff Jane Y.A. Doe was sexually assaulted by Defendant Nassar.

31. Through his position with MSU, his notoriety, and support by USAG and Twistars, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiff without any reasonable supervision by MSU or USAG.

---

[1] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. (Last accessed January 5, 2017).
[2] *Id.*
[3] *Id.*

32.  Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiff or her parents.

33.  All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University, at Twistars, or at USAG sanctioned events.

34.  The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiffs or their parents robbed them of the opportunity to reject the "treatment."

35.  Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiffs to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

36.  In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," which included Rachel Denhollander's allegations against Defendant Nassar.

37.  Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

38.  Plaintiffs have been forced to relive the trauma of the sexual assaults.

39.  In summer 2015, USAG relieved Defendant Nassar of his duties after becoming aware of concerns about his actions, yet USAG failed to inform Michigan State University of the circumstances regarding his dismissal.

40.  As early as 1999, representatives of Michigan State University were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of Plaintiffs through approximately 2016.

41.  Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiffs was in violation of Title IX of the Education Amendments

of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S. C. § 1983, as well as other Federal and State laws.

42.    MSU and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in violation of Michigan common law.

43.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, which is a felony punishable with a maximum penalty of imprisonment for life without the possibility of parole.[4]

44.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

45.    On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan[5] and Eaton County, Michigan.[6] Plaintiffs Jane L.B. Doe, Jane B.M. Doe, and Jane L.A. Doe are among the victims identified in the most recent state criminal charges.

46.    The acts, conduct, and omissions of Defendants Michigan State University, USA Gymnastics, and Twistars, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiffs and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiffs by Defendant Nassar, which has been devastating for Plaintiffs and their families.

---

[4] *People v. Nassar*, State of Michigan, Ingham County Circuit Court Case No. 17-143-FC.
[5] *People v. Nassar*, Ingham County District Court Case No. 17-00425-FY, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf
[6] *People v. Nassar*, Eaton County District Court Case No. 17-0318-FY, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf

47.     This action arises from Defendants' blatant disregard for Plaintiffs' federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

## II.     <u>JURISDICTION AND VENUE</u>

48.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

49.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, as more fully set forth herein.

50.     This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

51.     Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

52.     Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

53.     Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

54.     The claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. §

1681 *et seq.*, and under Michigan Law.

55.    The events giving rise to this lawsuit occurred in Ingham County, Michigan and Eaton County, Michigan both of which sit in the Southern Division of the Western District of Michigan.

56.    Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

57.    Because Michigan State University is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. § 600.6431 Plaintiffs filed Notices of Intent to File Claim with the Michigan Court of Claims on January 17, 2017, January 30, 2017, February 3, 2017, February 6, 2017, February 7, 2017, February 8, 2017, February 9, 2017, February 14, 2017, February 17, 2017, February 21, 2017, February 24, 2017, March 10, 2017, March 17, 2017, and June 9, 2017. A copy of the most recent and comprehensive Notice of Intent to File Claim that was filed with the Michigan Court of Claims on June 9, 2017 is attached as Exhibit 1.

## III.    <u>PARTIES AND KEY INDIVIDUALS</u>

58.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

59.    With the exception of Plaintiff Lindsey Lemke, the names of the Plaintiffs have been withheld from this Complaint to protect their identities as some are currently minor children, or were minor children at the time the sexual abuse occurred.[7]

60.    Plaintiff Lindsey Lemke ("Lemke") is an adult female and is a resident of Michigan.[8] Plaintiff

---

[7] Plaintiffs will seek an Order of the Court regarding disclosure of Plaintiffs' identities and all conditions for disclosure.
[8] Plaintiff Lindsey Lemke was previously identified as Intervenor-Plaintiff Jane Y. Doe in *Denhollander v. Mich. State Univ.*, No. 1:17-cv-00029 (W.D. Mich.).

Lemke was a minor for the majority of the times she was sexually assaulted, abused, and molested by Defendant Nassar.

61.  Plaintiff Jane L.B. Doe is an adult female and is a resident of Michigan. Plaintiff Jane L.B. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

62.  Plaintiff Jane A.P. Doe is an adult female and is a resident of Michigan. Plaintiff Jane A.P. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

63.  Plaintiff Jane S.M. Doe is an adult female and is a resident of Michigan. Plaintiff Jane S.M. Doe was a minor for some of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

64.  Plaintiff Jane B.M. Doe is an adult female and is a resident of Michigan. Plaintiff Jane B.M. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

65.  Plaintiff Jane L.A. Doe is an adult female and is a resident of Michigan. Plaintiff Jane L.A. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

66.  Plaintiff Jane H.H. Doe is an adult female and is a resident of Michigan. Plaintiff Jane H.H. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

67.  Plaintiff Jane W.N. Doe is an adult female and is a resident of Michigan. Plaintiff Jane W.N. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

68.  Plaintiff Jane H.B. Doe is an adult female and is a resident of Michigan. Plaintiff Jane H.B.

Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

69.   Plaintiff Jane L.K. Doe is an adult female and is a resident of Michigan.

70.   Plaintiff Jane J.S. Doe is an adult female and is a resident of Michigan. Plaintiff Jane J.S. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

71.   Plaintiff Jane R.E. Doe is a minor female and is a resident of Michigan.

72.   Jane R.L. Doe is an adult female, the mother of Plaintiff Jane R.E. Doe, and a resident of Michigan.

73.   Plaintiff Jane B.A. Doe is an adult female and is a resident of Michigan. Plaintiff Jane B.A. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

74.   Plaintiff Jane H.T. Doe is an adult female and is a resident of Michigan. Plaintiff Jane H.T. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

75.   Plaintiff Jane M.W. Doe is an adult female and is a resident of Michigan. Plaintiff Jane M.W. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

76.   Plaintiff Jane Y.A. Doe is an adult female and is a resident of North Carolina. Plaintiff Jane Y.A. Doe was a minor for the majority of the times she was sexually assaulted, abused, and molested by Defendant Nassar.

77.   Plaintiff Jane S.J. Doe is an adult female and is a resident of Cabo San Lucas, Mexico. Plaintiff Jane S.J. Doe was a minor at the times she was sexually assaulted, abused, and molested by Defendant Nassar.

78.     Defendant Lawrence "Larry" Nassar, is a Doctor of Osteopathic Medicine, and is a resident of Michigan.

79.     Defendant Michigan State University (hereinafter, "Defendant MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan.

80.     Defendant Michigan State University receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

81.     Defendant The Board of Trustees of Michigan State University (hereinafter, "Defendant MSU Trustees") is the governing body for Michigan State University.

82.     Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

83.     Lou Anna K. Simon is the current President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Ms. Simon held several administrative roles including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

84.     M. Peter McPherson is the immediate Past President of Defendant MSU, and served as President from approximately 1993 – 2004.

85.     William D. Strampel, D.O. is the Dean of the College of Osteopathic Medicine at Michigan State University serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

86.     Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at Michigan State University.

87.     Brooke Lemmen, D.O. is or was a practicing physician with MSU Sports Medicine from approximately 2010 to 2017.

88.     Defendant United States of America Gymnastics (hereinafter "Defendant USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to Michigan.

89.     Steve Penny is the current president of Defendant USAG, named in approximately April 2005, who is currently responsible for the overall management and strategic planning of Defendant USAG.

90.     Robert Colarossi is the past president of Defendant USAG and held the position from approximately 1998 to 2005, and during that time was responsible for the overall management and strategic planning of Defendant USAG.

91.     Defendant Twistars USA, Inc. d/b/a Gedderts' Twistars Gymnastics Club USA (hereinafter, "Defendant Twistars") was and continues to be an organization incorporated in Michigan.

92.     John Geddert is the owner and operator of Twistars USA, Inc. d/b/a Gedderts' Twistars Gymnastics Club USA.

## IV.      **COMMON FACTUAL ALLEGATIONS**

93.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

94.     At all relevant times, Defendant Nassar maintained an office at MSU in East Lansing, Michigan.

95.     At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

96.     At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

97.     At all relevant times, including the years 1996 to 2015, Defendant Nassar was acting in the

scope of his employment or agency with Defendant USAG.

98.   At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his agency with Defendant Twistars.

99.   Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

100.  Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

    a.   Certified Athletic Trainer;

    b.   Osteopathic Physician;

    c.   National Medical Director;

    d.   National Team Physician, USA Gymnastics;

    e.   National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

101.  Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

    a.   Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

    b.   Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

    c.   Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

    d.   Team Physician, Defendant MSU's Men's and Women's Crew Team;

    e.   Team Physician, Defendant MSU's Intercollegiate Athletics;

    f.   Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

    g.   Advisor, Student Osteopathic Association of Sports Medicine.

102.  As part of Defendant Nassar's employment and contractual duties with MSU, Defendant

Nassar was responsible for spending between 50 to 70% of his time engaged in "Outreach" and/or "Public Services."

103. A part of Defendant Nassar's outreach included providing medical treatment to athletes affiliated with Defendants USAG and Twistars as well as other organizations such as Holt High School.

104. Defendant Twistars is a gymnastics facility with which Defendant Nassar affiliated from its inception in or around 1996.

105. John Geddert, owner and operator of Twistars USA, Inc. d/b/a Gedderts' Twistars Gymnastics Club USA served as the USA World and Olympic Women's Gymnastics Team Head Coach.

106. Mr. Geddert regularly recommended Defendant Nassar to members of Defendant Twistars as a reputable physician.

107. For a period of time, Defendant Twistars displayed a photo of Defendant Nassar at its facility.

108. As an agent of Defendant Twistars, Defendant Nassar regularly provided services and treatment to Defendant Twistars' members and Defendant USAG's members on Defendant Twistars' premises.

109. As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

110. Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

111. While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

112. During his employment, agency, and representation with the MSU Defendants, Defendant USAG, and Defendant Twistars, Defendant Nassar sexually assaulted, abused, and molested

Plaintiffs by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and anal penetration.

113. The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.[9]

114. In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert regarding Dr. Nassar's conduct, yet the concerns and allegations went unaddressed.

115. In or around 1999 the MSU Defendants were also put on notice of Defendant Nassar's conduct by a MSU student athlete after she complained to MSU employees, including trainers and her head coach, that Defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

116. Despite her complaints to MSU representatives, the student athlete's concerns and allegations went unaddressed.

117. In approximately 2000, a female student athlete and member of Defendant MSU's Women's Softball Team, Tiffany Thomas Lopez, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.

118. Ms. Lopez's allegations regarding the sexual assault include the following statements:

Plaintiff is informed and believes, and on that basis alleges, that Defendants knew or should have known that NASSAR had engaged in unlawful sexually-related conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to Plaintiff, her parents and others, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff. Specifically, the Defendant MSU knew that NASSAR was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young females, based on the following:

---

[9]   *See,*   Michigan   Administrative   Code,   R.   325.70001,   et   seq.,   Available   at
http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf. Last accessed, January 5, 2017.

a. The Plaintiff, approximately 18 years old at the time, had a visit with NASSAR where he touched her vagina, in order to purportedly heal back pain she was having, under the guise of legitimate medical treatment. The Plaintiff complained to a trainer on her softball team who responded by saying that NASSAR was a world renowned doctor, and that it was legitimate medical treatment. The Plaintiff continued with the purported treatment;

b. As the purported treatments continued, NASSAR became more bold, having the Plaintiff remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina. The Plaintiff, again, reported to Defendant MSU training staff, this time a higher ranking trainer. This trainer told the Plaintiff that the treatment sounded unusual and that the Plaintiff needed to speak to an even higher level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

c. When the Plaintiff went to see this individual, the Plaintiff was told by that individual that what happened to the Plaintiff was not sexual abuse, that NASSAR was a world renowned doctor, and that the Plaintiff was not to discuss what happened with NASSAR and was to continue seeing him for purported treatment. The Plaintiff continued to see NASSAR for treatment;

d. Finally, in or around 2001, the Plaintiff refused to continue to see NASSAR for these abusive and invasive procedures. Defendant MSU then pressured and coerced the Plaintiff to declare herself medically inactive. The Plaintiff was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.[10]

119.   Despite her complaints to MSU employees, agents, and representatives, Ms. Lopez's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

120.   Because MSU took no action to investigate the 1999 or 2000 complaints and took no corrective action, from 2000 to 2016, under the guise of treatment, Plaintiffs, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by vaginal and anal digital penetration, without the use of gloves or lubricant and by touching and groping their breasts.

---

[10] *See*, Case No. BC644417, filed with the Superior California Court of the State of California, County of Los Angeles, December 21, 2016, ¶26.

121.    In 2004, Defendant Nassar authored a chapter in Principles of Manual Sports Medicine by Steven J. Karageanes.

122.    In the chapter, Defendant Nassar described the pelvic diaphragm, coccyx, and sacroiliac ligaments as an area of the body not fully examined due to its proximity to the genitalia and buttocks, and stated it was "referred to as the 'no fly zone' because of the many cultural stigmas in touching this area."

123.    Defendant Nassar recommended taking "special measures to explain any examination and techniques applied in this region," and "warning in advance of what you are planning to do," among other suggestions.

124.    There is no mention of intravaginal or intra-rectal techniques or procedures in the chapter.

125.    As described in detail below, Defendant Nassar often failed to follow his own recommendations with Plaintiffs as:

        a.      he did not explain any intravaginal or intra-rectal techniques to Plaintiffs or their parents; and,

        b.      he did not warn Plaintiffs he was going to engage in vaginal or anal digital penetration before doing so.

126.    Also in 2004, a young woman reported Defendant Nassar's conduct to her parents and to the Meridian Township Police Department in Meridian Township, Michigan in 2004.

127.    In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints, and their general policies, practices, and

customs pertaining to their responsibilities under Title IX.[11]

128.   The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[12]

129.   While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014. The victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[13]

130.   Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity.

131.   However, the victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

a.   Defendant Nassar was sexually aroused while touching her;

b.   The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

132.   Three months after initiating the investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's

---

[11] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

[12] *See,* Resolution Agreement, August 28, 2015, OCR Document #15-11-2098, #15-14-2133. Available at, https://www2.ed.gov/documents/press-releases/michigan-state-agreement.pdf. Last accessed January 5, 2017.

[13] *See,* At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. Last accessed January 5, 2017.

conduct "medically appropriate" and "[n]ot of a sexual nature."[14]

133.   One of the medical experts consulted by the Office of Institutional Equity in investigating the victim's allegations was Brooke Lemmen, D.O.

134.   Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines including:

    a.    Defendant Nassar was not to examine or treat patients alone but was to be accompanied by a chaperone such as a resident or nurse; [15]

    b.    The alleged "procedure" was to altered to ensure there would be little to no skin to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

    c.    New people in the practice were to be "oriented" to ensure understanding with the guidelines.

135.   After receiving allegations of "athlete concerns," in approximately summer 2015 Defendant USAG relieved Defendant Nassar of his duties.[16]

136.   At no time did Defendant USAG inform Defendants MSU, MSU Trustees, or other MSU representatives of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG.

137.   From July 2014 to September 2016, despite complaints about Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

---

[14] *Id.*

[15] *Id.*

[16] *See,* Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/ former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed January 5, 2017.

138.   Several Plaintiffs were made aware of Defendant Nassar's widespread sexual abuse on or around September 12, 2016 or sometime thereafter through related media coverage.[17]

139.   Others have been made aware of the allegations of Defendant Nassar's conduct more recently through related media coverage.

140.   Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

   a.   Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[18] and,

   b.   A former patient of Defendant Nassar, Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Ms. Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

      i.   Massaging her genitals;

      ii.   Penetrating her vagina and anus with his finger and thumb; and,

      iii.   Unhooking her bra and massaging her breasts.[19]

141.   Reasons given to Defendant Nassar for his termination included but were not limited to:

   a.   Deviation from "required best practices put in place following the internal sexual harassment investigation conducted … in 2014;"

   b.   Failure to disclose a 2004 complaint to Meridian Township Police; and,

---

[17] Id.

[18] See, Case No. 34-2016-00200075, filed with the Superior Court of the State of California, County of Sacramento, September 8, 2016. A copy of the Complaint is available at https://www.documentcloud.org/_documents/3106054-JANE-JD-COMPLAINT-Signed.html. Last accessed January 5, 2017.

[19] See, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/_former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed January 5, 2017.

    c.    Dishonesty by Defendant Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

142.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on $1 million bond.[20]

143.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

144.    According to the federal indictment,[21] Defendant Nassar:

    a.    Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

    b.    Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who had not attained 12 years of age.

145.    Testimony given by an FBI agent at a hearing held on December 21, 2016, alleged, among other allegations, that Defendant Nassar used a GoPro camera to record video images of children in a swimming pool and that:

    a.    Defendant Nassar's hand can be seen grabbing one girl's hand and shoving it into the vaginal area of another girl; and,[22]

    b.    Defendant Nassar's thumb can be seen pressing into a child's vagina/vaginal area.[23]

146.    In mid-January 2017, Brooke Lemmen, D.O. submitted a letter of resignation to Mr. Strampel

---

[20] State of Michigan, Ingham County Circuit Court Case No. 1603031.
[21] 1:16-cr-00242 PageID.1-4.
[22] *Id.* at PageID.49-50.
[23] *Id.* at PageID.50.

amid allegations that she:

a.     Removed several boxes of confidential treatment patient records from Defendant MSU's Sports Medicine clinic at Defendant Nassar's request;

b.     Did not disclose to Defendant MSU that Defendant USAG was investigating Defendant Nassar as of July 2015; and,

c.     Made a staff member feel pressured not to fully cooperate in an internal investigation into allegations against Defendant Nassar.

147.    On February 7, 2017, a superseding indictment added an additional count of "Destruction and Concealment of Records and Tangible Objects" alleging between September 19, 2016 and September 20, 2016, Defendant Nassar "caused a third-party vendor to permanently delete and destroy all images, records, documents, and files contained on the hard drive of a laptop computer, and the defendant threw in the trash a number of external hard drives."[24]

148.    On February 17, 2017, following a preliminary examination, Defendant Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County, Michigan following testimony which included, among others, allegations of digital vaginal penetration at Defendant Nassar's residence.

149.    On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan[25] and Eaton County, Michigan.[26]

150.    Plaintiffs Jane L.B. Doe, Jane B.M. Doe, and Jane L.A. Doe are among the victims identified

---

[24] *Id.* at PageID.88.
[25] *State v. Nassar*, Ingham County District Court Case No. 17-00425, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf
[26] *State v. Nassar*, Eaton County District Court Case No. 17-0318, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf

in the most recent state criminal charges.

151.    To the best of Plaintiffs' knowledge, Defendant Nassar is in federal custody pending the child pornography criminal charges.

## V.    SPECIFIC FACTUAL ALLEGATIONS

### A.    LINDSEY LEMKE

152.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

153.    Plaintiff Lemke started training at Twistars in approximately 2004.

154.    After suffering a back injury in approximately 2008, Twistars instructed Plaintiff Lemke to seek treatment with Nassar.

155.    Nassar gave Plaintiff Lemke gifts on occasion, such as a pin from his participation in the Olympic games with USAG.

156.    In addition, Nassar would also give Plaintiff Lemke gifts for her birthday, and he also gave Plaintiff Lemke a gift upon her matriculation to college to the University of North Carolina.

157.    During her initial visits with Nassar, Plaintiff Lemke would treat with Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

158.    These visits would often occur outside of regular clinic hours when the other clinic personnel had already left for the day.

159.    Nassar instructed Plaintiff Lemke to text his personal cell phone when she arrived, and he would allow her entrance to the clinic via a side door.

160.    For later treatments, Plaintiff Lemke would have her appointments with Nassar in the back room at Twistars and at Nassar's house.

161.    Nassar lived in the same neighborhood as Plaintiff Lemke and her father, and Nassar established a relationship of trust with both Plaintiff Lemke and parents.

162.    Nassar's gift-giving and relationship with Plaintiff Lemke and her parents further ingratiated himself into a position of trust.

163.    Nassar would usually begin treatments by looking at the alignment of Plaintiff Lemke's back. Then, Nassar would massage Plaintiff Lemke's back and move downwards toward her buttocks. Nassar would then put his hands on Plaintiff Lemke's genital area, push on the sides of her vagina, and rub her vagina over the top of her clothes. From there, Nassar would reach is hand into Plaintiff Lemke's underwear and rub Plaintiff Lemke's bare skin on and around her vagina. Finally, Nassar would digitally penetrate Plaintiff Lemke's vagina.

164.    From approximately 2008 to 2012, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Lemke by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves or lubricant and without Plaintiff Lemke's consent or the consent of Plaintiff Lemke's parents.

165.    Plaintiff Lemke was a minor at the time of these assaults, as she did not reach the age of majority until 2013.

166.    From 2008 to 2012, Plaintiff Lemke was assaulted by Nassar approximately three times per week and the assaults would take place in a back room at Twistars, in the basement of Nassar's home in Holt, Michigan, or at Nassar's office at MSU.

167.    During this four-year-period, Nassar sexually assaulted, battered, abused, and molested Plaintiff Lemke on approximately six hundred different occasions.

168.    In the fall of 2015, Plaintiff Lemke began attending MSU on athletic scholarship on the women's gymnastics team.

169.    Plaintiff Lemke continued treatments with Nassar while at MSU from approximately December 2015 to September 2016.

170.    Plaintiff Lemke treated with Nassar in approximately 2016 at his office at MSU.

171.   In one or more of these 2016 treatments, Plaintiff Lemke was suffering from back pain. Under the guise of treatment, Nassar performed acupuncture on Lemke's buttocks and genital area.

172.   Plaintiff Lemke did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

173.   Plaintiff Lemke believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

174.   In approximately September 2016, during one of Plaintiff Lemke's gymnastics practices, a representative from the MSU Athletic Department, came to the MSU Women's Gymnastics team practice and instructed the team to leave the gym for a meeting. During this meeting, the representative informed Plaintiff Lemke and the MSU Women's Gymnastics team that allegations of sexual abuse had been brought forward against Nassar.

175.   This MSU representative also told Plaintiff Lemke to respond, "No comment," to any questions from media, not to discuss Nassar with their families, and to forward any calls to MSU's legal department.

176.   Plaintiff Lemke and her teammates came away from this meeting with the impression that they should also not discuss Nassar with the police or law enforcement.

177.   Shortly after the meeting, then-MSU Women's Gymnastics Head Coach Kathie Klages (hereinafter "Klages") told Plaintiff Lemke that her personal cellular telephone could be subject to "checks."

178.   Plaintiff Lemke understood this statement to mean that MSU intended to randomly check her personal cellular telephone to ensure that she was not speaking with media or law enforcement regarding the allegations against Nassar.

179.   After Nassar was indicted on federal child pornography charges, Plaintiff Lemke discussed the sexual assaults with her mother, Christy Lemke-Akeo.

180.    Shortly after this conversation, Christy Lemke-Akeo called Klages to discuss the assaults against her daughter. Klages responded by stating that Nassar's digital vaginal penetration of Plaintiff Lemke was a proven medical treatment. When questioned regarding the child pornography charges against Nassar by Christy Lemke-Akeo, Klages responded by stating that someone may have planted the child pornography on Nassar's property in an attempt frame Nassar.

**B.    JANE L.B. DOE**

181.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

182.    Plaintiff Jane L.B. Doe was a gymnast who began training at Twistars in approximately 2000 or 2001.

183.    In approximately 2008, Plaintiff Jane L.B. Doe, while engaging in gymnastics training at Twistars, suffered a back injury.

184.    Twistars instructed Plaintiff Jane L.B. Doe to seek treatment with Nassar who would often be present at Twistars during Plaintiff Jane L.B. Doe's training sessions to provide medical treatment to gymnasts.

185.    Plaintiff would also treat with Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

186.    Plaintiff Jane L.B. Doe treated with Nassar at his office at MSU and in the back room at Twistars from approximately 2008 to 2012.

187.    From 2008 to 2012, Plaintiff Jane L.B. Doe was a minor, approximately 12 to 17 years old.

188.    Plaintiff Jane L.B. Doe presented to Defendant Nassar with complaints of back pain as a result of gymnastics.

189.    From approximately 2008 to 2012, under the guise of treatment, Nassar sexually assaulted,

battered, abused, and molested Plaintiff by touching and rubbing her genital area and digitally penetrating her vagina and anus without the use of gloves or lubricant and without Plaintiff's consent or the consent of Plaintiff's parents on approximately two hundred different occasions.

190. The assaults would occur almost every Monday evening in the back room at Twistars.

191. A few of the assaults also occurred at Nassar's office at MSU.

192. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane L.B. Doe or her parents.

193. Plaintiff Jane L.B. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

194. Plaintiff Jane L.B. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## C.   JANE A.P. DOE

195. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

196. Plaintiff Jane A.P. Doe was a gymnast who trained at Twistars from approximately 2003 to 2014.

197. When Plaintiff Jane A.P. Doe would suffer injuries during gymnastics training, Twistars instructed her to seek treatment with Nassar who would often be present at Twistars during Plaintiff Jane A.P. Doe's training sessions to provide medical treatment to gymnasts.

198. Plaintiff Jane A.P. Doe also treated with Nassar at his office at MSU.

199. Nassar also instructed Plaintiff Jane A.P. Doe to come to his house in Holt, Michigan for medical visits on approximately three separate occasions.

200. Nassar would also communicate with Plaintiff Jane A.P. Doe through Facebook, including the scheduling of appointments, and would occasionally "like" pictures of Plaintiff Jane A.P. Doe

wearing swimwear.

201.   Plaintiff Jane A.P. Doe presented to Dr. Nassar with complaints of back and hip pain suffered through her participation in gymnastics.

202.   From approximately 2011 to 2013, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane A.P. Doe by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves or lubricant and without Plaintiff's consent or the consent of Plaintiff's parents in the back room at Twistars and in the basement of Nassar's home on approximately three separate occasions.

203.   Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane A.P. Doe in approximately 2011 by reaching his hands underneath her leotard and rubbing and touching Plaintiff's genital area without gloves, notice, warning, or Plaintiff Jane A.P. Doe's consent when treating Plaintiff Jane A.P. Doe for a back injury in the back room of Twistars.

204.   In approximately 2012, Nassar instructed Plaintiff Jane A.P. Doe to come to his home for "treatment."

205.   On this occasion, Plaintiff Jane A.P. Doe was seeking treatment for a hip injury.

206.   Plaintiff Jane A.P. Doe and her mother went to the basement of Nassar's home in Holt, Michigan, where Nassar maintained an office.

207.   Plaintiff Jane A.P. Doe positioned herself on the adjusting table in Nassar's basement, and Nassar covered the lower half of Plaintiff Jane A.P. Doe's body with a towel to conceal his actions.

208.   Nassar then washed his hands with hand sanitizer, reached his hands underneath the towel, pulled down Plaintiff Jane A.P. Doe's yoga pants, and digitally penetrated Plaintiff Jane A.P. Doe's vagina without the use of gloves and without Plaintiff Jane A.P. Doe's consent or the consent of Plaintiff Jane A.P. Doe's mother, who was physically present in the room at the

time.

209.  Plaintiff Jane A.P. Doe's mother was unaware that Nassar was touching and digitally penetrating Plaintiff Jane A.P. Doe's vagina because Nassar had concealed his actions by placing a towel over the lower half of Plaintiff Jane A.P. Doe's body.

210.  In approximately 2013, Nassar again sexually assaulted Plaintiff Jane A.P. Doe in the back room of Twistars by reaching his hands underneath Plaintiff Jane A.P. Doe's leotard and then rubbing and touching Plaintiff Jane A.P. Doe's genital area without the use of gloves and without Plaintiff Jane A.P. Doe's consent or the consent of Plaintiff Jane A.P. Doe's parents.

211.  From 2011 to 2013, Plaintiff Jane A.P. Doe was a minor, approximately 14 to 17 years old.

212.  Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane A.P. Doe's vagina or genital area.

213.  Plaintiff Jane A.P. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

214.  Plaintiff Jane A.P. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**D.    JANE S.M. DOE**

215.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

216.  As a minor, Jane S.M. Doe participated in organized gymnastics.

217.  Plaintiff Jane S.M. Doe treated with Dr. Nassar in approximately 1998 or 1999 and in approximately 2005 or 2006 at his office at MSU.

218.  From 1998 to 1999, Plaintiff Jane S.M. Doe was a minor, approximately 12 to 14 years old.

219.  Plaintiff Jane S.M. Doe presented to Defendant Nassar with complaints of lower back pain suffered as a result of gymnastics.

220.  On approximately six separate occasions at appointments at his office at MSU, Defendant

Nassar digitally penetrated Plaintiff Jane S.M. Doe's vagina without prior notice or the consent of Plaintiff Jane S.M. Doe or her parents and without gloves or lubricant. The assaults would sometimes last up to 45 minutes.

221. On at least one occasion, Plaintiff Jane S.M. Doe's mother was physically present in the room but was unable to see the sexual assault occur based on the way that Nassar had positioned Plaintiff Jane S.M. Doe.

222. Plaintiff Jane S.M. Doe's lower back injury was re-aggravated in approximately 2005 or 2006, so Plaintiff Jane S.M. Doe returned to the MSU Sports Medicine Clinic to see Nassar for treatment.

223. In approximately 2005 or 2006, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane S.M. Doe by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves or lubricant and without Plaintiff Jane S.M. Doe's consent on approximately 2 to 4 different occasions.

224. On at least one of these occasions, Plaintiff Jane S.M. Doe observed that Nassar was sexually aroused following the "treatment."

225. Plaintiff Jane S.M. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

226. Plaintiff Jane S.M. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**E.     JANE B.M. DOE**

227. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

228. Plaintiff Jane B.M. Doe engaged in gymnastics training at Twistars starting when she was about 4 years old.

229. In approximately 2008, Plaintiff Jane B.M. Doe, while engaging in gymnastics training at

Twistars, suffered a back injury.

230. Twistars instructed Plaintiff Jane B.M. Doe to seek treatment with Nassar who would often be present at Twistars during Plaintiff Jane B.M. Doe's training sessions to provide medical treatment to gymnasts.

231. Plaintiff Jane B.M. Doe would also treat with Nassar at his office at MSU's Sports Medicine Clinic for medical treatment, which is located on MSU's East Lansing, Michigan campus.

232. Plaintiff Jane B.M. Doe treated with Nassar from approximately 2008 until 2013 at the basement of Nassar's home, the back room at Twistars, and at Nassar's office at MSU.

233. From approximately 2008 to 2013, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane B.M. Doe in the basement of his home, the back room at Twistars, and at his office at MSU by touching and rubbing her breasts and genital area and digitally penetrating her vagina and anus without the use of gloves or lubricant and without Plaintiff's consent or the consent of Plaintiff's parents.

234. The digital vaginal penetrations would typically last about 15 minutes.

235. Plaintiff Jane B.M. Doe was a minor at the time of most of the sexual assaults, as she did not reach the age of majority until the spring of 2013.

236. Plaintiff Jane B.M. Doe saw Nassar approximately weekly for treatments from 2008 to 2013 and was digitally vaginally penetrated by Nassar during most of these appointments.

237. During at least one of the assaults, Nassar commented on the "tightness" of Plaintiff Jane B.M. Doe's vagina.

238. Plaintiff Jane B.M. Doe was never billed for "treatments" with Nassar.

239. Plaintiff Jane B.M. Doe's appointments with Nassar at his office at MSU almost always occurred outside of regular business hours with the exceptions being appointments for x-rays or other radiological imaging.

240. Nassar would make arrangements to let Jane B.M. Doe into Nassar's office at MSU because the main doors would be locked.

241. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane B.M. Doe or from Jane B.M. Doe's parents even though she was a minor at the time that most of the assaults occurred.

242. Plaintiff Jane B.M. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

243. Plaintiff Jane B.M. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### F. JANE L.A. DOE

244. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

245. Plaintiff Jane L.A. Doe began her involvement in gymnastics when she was approximately 3 years old.

246. Plaintiff Jane L.A. Doe started training at Twistars at approximately the age of 12.

247. In approximately 2009, Plaintiff, while engaging in gymnastics training at Twistars, suffered a back injury.

248. Twistars instructed Plaintiff to seek treatment with Nassar who would often be present at Twistars during Plaintiff's training sessions to provide medical treatment to gymnasts.

249. Plaintiff Jane L.A. Doe treated with Defendant Nassar in approximately 2009 to 2011 at his office at MSU, the back room at Twistars, and in the basement of Nassar's home.

250. From 2009 to 2011, Defendant Jane L.A. Doe was a minor, approximately 15 to 17 years old.

251. From approximately 2009 to 2011, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane L.A. Doe in the basement of his home, the back room at Twistars, and at his office at MSU by touching and rubbing her genital area and

digitally penetrating her vagina without the use of gloves and without Plaintiff Jane L.A. Doe's consent or the consent of Plaintiff Jane L.A. Doe's parents.

252. During one of the first sexual assaults, Nassar told Plaintiff Jane L.A. Doe regarding the "treatment" involving digital vaginal penetration, "We don't tell parents about this because they wouldn't understand."

253. Plaintiff Jane L.A. Doe was a minor at the time she was assaulted as she did not reach the age of majority until 2012.

254. Plaintiff Jane L.A. Doe suffered at least one bacterial infection in a sensitive area during the time of her treatment.

255. At one point in time, Nassar sent Jane L.A. Doe a friend request on Facebook and would often comment on or "like" her photographs.

256. On one of Plaintiff Jane L.A. Doe's photographs on Facebook, Nassar commented, "[Y]ou radiate pure beauty."

257. Nassar did not give prior notice or obtain consent for digital vaginal penetration from Plaintiff Jane L.A. Doe or Plaintiff Jane L.A. Doe's parents even though she was a minor at the time.

258. Neither Plaintiff Jane L.A. Doe nor Plaintiff Jane L.A. Doe's parents consented to any touching, rubbing, or digital penetration of Plaintiff's vagina.

259. Plaintiff Jane L.A. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

260. Plaintiff Jane L.A. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

### G.   JANE H.H. DOE

261. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

262. As a minor, Plaintiff Jane H.H. Doe participated in high school cheerleading.

263.   In approximately 2009, Plaintiff Jane H.H. Doe suffered a hip injury while participating in cheerleading.

264.   After seeing several physicians, Plaintiff Jane H.H. Doe was referred to see Nassar at the MSU Sports Medicine Clinic.

265.   Part of the reason that Plaintiff Jane H.H. Doe went to see Nassar at the MSU Sports Medicine Clinic was because of Nassar's impressive resume and reputation in treating Olympic-level gymnasts.

266.   After Plaintiff Jane H.H. Doe completed an initial evaluation at the MSU Sports Medicine Clinic, she was scheduled for an appointment with Nassar for treatment.

267.   In approximately 2009 to 2010, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane H.H. Doe by touching and rubbing her genital area and digitally penetrating her vagina and anus without the use of gloves and without Plaintiff Jane H.H. Doe's consent or the consent of Plaintiff Jane H.H. Doe's parents on approximately 40 occasions over approximately an 18-month period.

268.   On at least one occasion, Plaintiff Jane H.H. Doe's mother was physically present in the room but was unable to see the sexual assault occur based on the way that Nassar had positioned Plaintiff Jane H.H. Doe.

269.   Plaintiff Jane H.H. Doe was a minor at the time that some of these assaults occurred, as she did not reach the age of majority until 2010.

270.   Plaintiff Jane H.H. Doe would wear normal street clothes to the appointments, and Nassar would request for her to change into shorts with Velcro down the side. During the "treatment," Nassar would unfasten the Velcro on the right side to gain access to Plaintiff Jane H.H. Doe's genital area.

271.   Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane

H.H. Doe or from Jane H.H. Doe's parents even though she was a minor at the time.

272. Plaintiff Jane H.H. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

273. Plaintiff Jane H.H. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## H. **JANE W.N. DOE**

274. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

275. As a minor, Plaintiff Jane W.N. Doe participated in high school gymnastics.

276. In approximately 1999 to 2000, Plaintiff Jane W.N. Doe suffered a back injury following a car accident.

277. After seeing several physicians, Plaintiff Jane W.N. Doe was referred to see Nassar at the MSU Sports Medicine Clinic.

278. Part of the reason that Plaintiff Jane W.N. Doe went to see Nassar at the MSU Sports Medicine Clinic was because of Nassar's impressive resume and reputation in treating Olympic-level gymnasts.

279. In approximately 1999 to 2000, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane W.N. Doe at Nassar's office at the MSU Sports Medicine Clinic by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves and without Plaintiff Jane W.N. Doe's consent or the consent of Plaintiff Jane W.N. Doe's parents on approximately 10 to 20 occasions over approximately a 12-month period.

280. On at least one occasion, Plaintiff Jane W.N. Doe's mother was physically present in the room but was unable to see the sexual assault occur based on the way that Nassar had positioned Plaintiff Jane W.N. Doe.

281. Plaintiff Jane W.N. Doe was a minor at the time these assaults occurred, as she did not reach the age of majority until 2001.

282. During some of the assaults, Nassar would become sexually aroused, and Plaintiff Jane W.N. Doe could feel Nassar's penis rubbing against her body.

283. The assaults would typically last for approximately one hour.

284. Based on Nassar's representations, Plaintiff Jane W.N. Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations by other women.

285. Plaintiff Jane W.N. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

286. Plaintiff Jane W.N. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## I.     JANE H.B. DOE

287. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

288. Plaintiff Jane H.B. Doe started participating in organized gymnastics when she was 3 years old.

289. Plaintiff Jane H.B. Doe started training at Twistars when she was approximately 11 years old.

290. Plaintiff Jane H.B. Doe suffered a number of injuries during her gymnastics training and was referred by Twistars to seek treatment with Nassar.

291. From approximately 2009 to 2014, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane H.B. Doe at Nassar's office at the MSU Sports Medicine Clinic, the back room at Twistars, and at the basement of Nassar's home, by touching and rubbing her genital area and digitally penetrating her vagina and anus without the use of gloves and without Plaintiff Jane H.B. Doe's consent or the consent of Plaintiff

Jane H.B. Doe's parents on approximately 100 different occasions.

292. Plaintiff Jane H.B. Doe was a minor at the time of these assaults.

293. During these assaults, Nassar would occasionally make comments about how one day Plaintiff Jane H.B. Doe would develop breasts and would also make comments about the size of Plaintiff Jane H.B. Doe's butt.

294. During one of the first assaults, Nassar ruptured Plaintiff Jane H.B. Doe's hymen because Plaintiff Jane H.B. Doe was a virgin and approximately 12 to 13 years old at the time of the first assault.

295. Due to Nassar's decision not to wear gloves during the assaults, Nassar's fingernails would occasionally lacerate the inside of Plaintiff Jane H.B. Doe's vagina and anus.

296. From approximately 2009 to 2014, Plaintiff Jane H.B. Doe suffered from an unusually high number of urinary tract infections and bladder infections, which Plaintiff Jane H.B. Doe believes may have been a consequence of Nassar's assaults.

297. Based on Nassar's representations, Plaintiff Jane H.B. Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations by other women.

298. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane H.B. Doe or from Jane H.B. Doe's parents even though she was a minor at the time.

299. Plaintiff Jane H.B. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

300. Plaintiff Jane H.B. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**J.       JANE L.K. DOE**

301. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

302. As a minor, Plaintiff Jane L.K. participated in high school gymnastics.

303. In approximately 2008, Plaintiff Jane L.K. Doe suffered a back injury.

304. After seeing several physicians, Plaintiff Jane L.K. Doe was referred to see Nassar at the MSU Sports Medicine Clinic.

305. Due to her background as a high school gymnast, part of the reason that Plaintiff Jane L.K. Doe went to see Nassar at the MSU Sports Medicine Clinic was because of Nassar's impressive resume and reputation in treating Olympic-level gymnasts.

306. After Plaintiff Jane L.K. Doe completed an initial evaluation at the MSU Sports Medicine Clinic, she was scheduled for an appointment with Nassar for treatment.

307. In approximately 2008 to 2009, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane L.K. Doe by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves and without Plaintiff Jane L.K. Doe's consent on approximately two to three occasions over approximately a 3-month period.

308. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane L.K. Doe.

309. Plaintiff Jane L.K. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

310. Plaintiffs Jane L.K. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**K.      JANE J.S. DOE**

311. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

312. Plaintiff J.S. Doe participated in high school soccer.

313. In approximately 2011, Plaintiff Jane J.S. Doe suffered a back injury.

314.     After seeing several physicians, Plaintiff Jane J.S. Doe was referred to see Nassar at the MSU Sports Medicine Clinic.

315.     Due to her background as a high school athlete, part of the reason that Plaintiff Jane J.S. Doe went to see Nassar at the MSU Sports Medicine Clinic was because of Nassar's impressive resume and reputation in treating Olympic-level athletes.

316.     After Plaintiff Jane J.S. Doe completed an initial evaluation at the MSU Sports Medicine Clinic, she was scheduled for an appointment with Nassar for treatment.

317.     In approximately 2011 to 2012, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane J.S. Doe by touching and rubbing her genital area and digitally penetrating her vagina and anus at his office at MSU without the use of gloves and without Plaintiff Jane J.S. Doe's consent or the consent of Plaintiff Jane J.S. Doe's parents on approximately thirty occasions over approximately a 10-month period.

318.     During one of the first treatments, Nassar told Plaintiff Jane J.S. Doe that he needed to insert his finger into her vagina and anus because that was the best way to manipulate the ligaments in her lower back.

319.     At one point in time, Nassar sent Plaintiff Jane J.S. Doe a request to be her friend on Facebook and would occasionally send her messages.

320.     Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane J.S. Doe.

321.     Plaintiff Jane J.S. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

322.     Plaintiff Jane J.S. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**L.     JANE R.E. DOE BY NEXT FRIEND JANE R.L. DOE**

323.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

324. In approximately 2012, Plaintiff Jane R.E. Doe began gymnastics training at Twistars.

325. Shortly after she started training at Twistars, Plaintiff Jane R.E. Doe suffered a back injury while engaging in gymnastics training at Twistars.

326. Twistars instructed Plaintiff Jane R.E. Doe to seek treatment with Nassar who would often be present at Twistars during Plaintiff Jane R.E. Doe's training sessions to provide medical treatment to gymnasts.

327. Plaintiff Jane R.E. Doe would also treat with Nassar at his office at MSU's Sports Medicine Clinic for medical treatment, which is located on MSU's East Lansing, Michigan campus.

328. Plaintiff Jane R.E. Doe treated with Nassar from approximately 2012 until 2015 at the back room at Twistars and at Nassar's office at MSU.

329. From approximately 2012 to 2015, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane R.E. Doe in the back room at Twistars and at his office at MSU by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves and without Plaintiff Jane R.E. Doe's consent or the consent of Plaintiff Jane R.E. Doe's parents.

330. Plaintiff Jane R.E. Doe was approximately 10 years old at the time of the first assault and is still a minor child.

331. The assaults at Nassar's office at the MSU Sports Medicine Clinic would typically last approximately 60 to 90 minutes.

332. The assaults at the back room at Twistars would typically last approximately 10 to 15 minutes.

333. Jane R.L. Doe was physically present during at least one of the "treatments" at Nassar's office at MSU, but Nassar positioned Plaintiff in a manner such that Jane R.L. Doe could not see the sexual assault.

334. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Jane R.E. Doe or from Jane R.L. Doe.

335. Plaintiff Jane R.E. Doe and Jane R.L. Doe did not treat or intend for Plaintiff Jane R.E. Doe to treat with Dr. Nassar for OB/GYN issues.

336. Plaintiff Jane R.E. Doe and Jane R.L. Doe believe the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**M.    JANE B.A. DOE**

337. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

338. As a minor child, Plaintiff Jane B.A. Doe engaged in gymnastics training at Olympia Gymnastics, Inc., d/b/a Olympia Gymnastics Academy in Shelby Township, Michigan.

339. Olympia Gymnastics Academy is a gym with certification and/or affiliation with USAG.

340. While training at Olympia Gymnastics Academy, Plaintiff Jane B.A. Doe suffered a foot injury.

341. Olympia Gymnastics Academy referred Plaintiff Jane B.A. Doe to see Nassar for treatment for her foot injury due in part to Nassar's employment, agency, or affiliation with USAG.

342. Based on the referral, Plaintiff Jane B.A. Doe sought treatment with Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

343. Plaintiff Jane B.A. Doe treated with Nassar in approximately 2010 at Nassar's office at the MSU Sports Medicine Clinic.

344. In approximately 2010, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane B.A. Doe at his office at MSU by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves and without Plaintiff Jane B.A. Doe's consent or the consent of Plaintiff Jane B.A. Doe's parents on approximately 20 different occasions.

345.  Plaintiff Jane B.A. Doe was approximately 12 years old at the time of the assaults.

346.  Plaintiff Jane B.A. Doe's parents were physically present during at least one of the "treatments" at Nassar's office at MSU, but Nassar positioned Plaintiff Jane B.A. Doe in a manner such that her parents could not see the sexual assault.

347.  Nassar affirmatively and falsely indicated to Plaintiff Jane B.A. Doe and her parents that he was performing legitimate medical treatment on Plaintiff Jane B.A. Doe when in fact he was sexually assaulting Plaintiff Jane B.A. Doe for his own self-gratification.

348.  Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane B.A. Doe or from Jane B.A. Doe's parents even though she was a minor at the time.

349.  Plaintiff Jane B.A. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

350.  Plaintiff Jane B.A. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## N.    JANE H.T. DOE

351.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

352.  In approximately 1997, Plaintiff Jane H.T. Doe began gymnastics training at Twistars.

353.  When Plaintiff Jane H.T. Doe suffered injuries or experienced pain during her training, Twistars instructed Plaintiff Jane H.T. Doe to seek treatment with Nassar who would often be present at Twistars during Plaintiff Jane H.T. Doe's training sessions to provide medical treatment to gymnasts.

354.  Plaintiff Jane H.T. Doe treated with Nassar from approximately 2001 until 2002 at the back room at Twistars.

355.  From approximately 2001 to 2002, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane H.T. Doe in the back room at Twistars by

touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves and without Plaintiff Jane H.T. Doe's consent or the consent of Plaintiff Jane H.T. Doe's parents.

356.   Plaintiff Jane H.T. Doe was approximately 14 years old at the time of the first assault.

357.   Plaintiff Jane H.T. Doe was sexually assaulted by Nassar approximately once or twice per week by Nassar in the back room at Twistars from approximately 2001 to 2002.

358.   On a number of occasions, Plaintiff Jane H.T. Doe observed that Nassar was sexually aroused during the "treatments."

359.   In 2001 to 2002, Plaintiff Jane H.T. Doe was a minor and was approximately 12 to 14 years old.

360.   Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane H.T. Doe or her parents.

361.   Plaintiff Jane H.T. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

362.   Plaintiffs Jane H.T. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**O.     JANE M.W. DOE**

363.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

364.   Plaintiff Jane M.W. Doe began participation in gymnastics when she was just 3 years old.

365.   In 2001, when Plaintiff Jane M.W. Doe was about 10 years old, she started gymnastics training at Conrad's Gymnastics Academy, Inc., d/b/a Michigan Elite Gymnastics Academy (commonly known as "MEGA") in Farmington Hills, Michigan.

366.   MEGA is a gym with certification and/or affiliation with USAG.

367.   While training at MEGA, Plaintiff Jane M.W. Doe suffered a foot injury.

368. Sometime in 2006, Nassar came to MEGA to provide medical examinations to gymnasts and to check their flexibility.

369. In approximately 2008, Plaintiff Jane M.W. Doe suffered a lower back injury during her gymnastics training at MEGA.

370. MEGA referred Plaintiff Jane M.W. Doe to see Nassar for treatment due in part to Nassar's employment, agency, or affiliation with USAG.

371. Based on the referral, Plaintiff Jane M.W. Doe sought treatment with Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

372. Plaintiff Jane M.W. Doe treated with Nassar in approximately 2008 at Nassar's office at the MSU Sports Medicine Clinic.

373. In approximately 2008, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane M.W. Doe at his office at MSU by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves and without Plaintiff Jane M.W. Doe's consent or the consent of Plaintiff Jane M.W. Doe's parents on approximately 2 to 3 different occasions.

374. During Plaintiff Jane M.W. Doe's first visit to Nassar's office, Nassar gave her a postcard with signed autographs of Olympic gymnasts.

375. Plaintiff Jane M.W. Doe was approximately 12 years old at the time of the assaults.

376. Plaintiff Jane M.W. Doe's mother was physically present during at least one of the "treatments" at Nassar's office at MSU, but Nassar positioned Plaintiff Jane M.W. Doe in a manner such that her mother could not see the sexual assault.

377. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane M.W. Doe or from Jane M.W. Doe's parents even though she was a minor at the time.

378. Plaintiff Jane M.W. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

379.     Plaintiff Jane M.W. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

**P.      JANE Y.A. DOE**

380.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

381.     Plaintiff Jane Y.A. Doe began participation in gymnastics when she was just 2 or 3 years old.

382.     In 2002, when Plaintiff Jane Y.A. Doe was about 11 years old, she started gymnastics training at Red Cedar Gymnastics, L.L.C., d/b/a Red Cedar Gymnastics in Okemos, Michigan.

383.     Red Cedar Gymnastics, L.L.C. is a gym with certification and/or affiliation with USAG.

384.     While training at Red Cedar Gymnastics, Plaintiff Jane Y.A. Doe suffered from plantar fasciitis.

385.     Sometime in 2002, Plaintiff Jane Y.A. Doe was referred to Nassar for her foot injury by Red Cedar Gymnastics coaches or staff.

386.     Plaintiff Jane Y.A. Doe suffers from an autoinflammatory disease that affects her muscles and tendons called Cryopyrin-Associated Periodic Syndromes ("CAPS").

387.     As a result of her CAPS, Plaintiff Y.A. Doe was forced to take a break from gymnastics training from approximately 2003-2005.

388.     In approximately 2007, Plaintiff Y.A. Doe was forced to retire completely from gymnastics at approximately age 15 due to CAPS.

389.     Despite her diagnosis, Plaintiff Y.A. Doe remained active in other high school sports including swimming, diving, and cheerleading.

390.     Plaintiff Jane Y.A. Doe knew of Nassar from her involvement in organized gymnastics and was referred to Nassar to obtain treatment for CAPS because of Nassar's employment, agency, or affiliation with USAG, MSU, and Twistars.

391.   Plaintiff Jane Y.A. Doe sought treatment with Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

392.   Plaintiff Jane Y.A. Doe treated with Nassar from approximately 2009-2016 at Nassar's office at the MSU Sports Medicine Clinic.

393.   From approximately 2009-2016, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane Y.A. Doe at his office at MSU by touching and rubbing her genital area and digitally penetrating her vagina and anus without the use of gloves and without Plaintiff Jane Y.A. Doe's consent or the consent of Plaintiff Jane Y.A. Doe's parents on approximately 50 different occasions during approximately a 6-year period.

394.   From approximately 2009-2016, under the guise of treatment, Nassar rubbed Plaintiff Jane Y.A. Doe's breast, including in 2016 when Nassar groped Plaintiff Jane Y.A. Doe's breast, without the use of gloves and without Plaintiff Jane Y.A. Doe's consent or the consent of Plaintiff Jane Y.A. Doe's parents on approximately 50 different occasions during approximately a 6-year period.

395.   Plaintiff Jane Y.A. Doe was approximately 16-23 years old at the time of the assaults.

396.   On at least one occasion, Plaintiff Y.A. Doe noticed Nassar was aroused during one of the "treatments."

397.   Plaintiff Jane Y.A. Doe's mother was physically present during at least one of the "treatments" at Nassar's office at MSU, but Nassar positioned Plaintiff Jane Y.A. Doe in a manner such that her mother could not see the sexual assault.

398.   Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane Y.A. Doe or from Jane Y.A. Doe's parents even though she was a minor at the time.

399.   Plaintiff Jane Y.A. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

400.   Plaintiff Jane Y.A. Doe believes the conduct by Defendant Nassar was sexual assault, abuse,

and molestation and for Defendant Nassar's pleasure and self-gratification.

**Q.    JANE S.J. DOE**

401.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

402.    Plaintiff Jane S.J. Doe grew up in Wisconsin.

403.    Plaintiff Jane S.J. Doe began gymnastics training when she was about 6 years old.

404.    At the age of 11, due to her aptitude and skill, Plaintiff Jane S.J. Doe began gymnastics training at a gym in Madison, Wisconsin that would allow her to compete on a national level.

405.    By the age of 13, Plaintiff Jane S.J. Doe began seriously training for a spot on the 1996 Women's Olympic Gymnastics Team.

406.    At the age of approximately 15, Plaintiff Jane S.J. Doe began experiencing tremendous back pain and was diagnosed with fracture in one of the vertebrae in her back.

407.    After her severe back injury, Plaintiff Jane S.J. Doe trained for the Junior Level Olympics, a sanctioned competition by USAG.

408.    In 1997, when Plaintiff Jane S.J. Doe was approximately 18 years old, she competed at the Nationals meet for the Junior Level Olympics, which was a sanctioned competition by USAG.

409.    The Nationals meet was held at Disney's ESPN Wide World of Sports Complex near Orlando, Florida.

410.    During this competition, Plaintiff Jane S.J. Doe's back injury flared up and caused her to seek medical treatment from the USAG-provided medical staff at the competition.

411.    Nassar was the only doctor that was in the training room at the competition.

412.    Nassar had Plaintiff Jane S.J. Doe remove her leotard.

413.    In approximately 1997, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane S.J. Doe at the Junior Olympics Nationals, USAG

sanctioned event, by touching and rubbing her genital area and digitally penetrating her vagina without the use of gloves and without Plaintiff Jane S.J. Doe's consent.

414.    The alleged "treatment" lasted approximately 20-30 minutes.

415.    Nassar did not use lotion or lubricant when he digitally penetrated Plaintiff Jane S.J. Doe.

416.    Plaintiff Jane S.J. Doe's coach was physically present during the "treatment," but Nassar positioned Plaintiff Jane S.J. Doe in a manner such that her coach could not see the sexual assault.

417.    Defendant Nassar did not give prior notice or obtain consent for digital penetration from Jane S.J. Doe.

418.    Plaintiff Jane S.J. Doe did not treat or intend to treat with Dr. Nassar for OB/GYN issues.

419.    Plaintiff Jane S.J. Doe believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## VI.    **FRAUDULENT CONCEALMENT**

### A.    **DEFENDANT NASSAR**

420.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

421.    Plaintiffs hereby allege that Defendant Nassar committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant MSU at the time his sexual assaults occurred making a material representation(s) to Plaintiffs involving a past or existing fact by:

a.    making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal or anal penetration;

b.    making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.    making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.    making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.    making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.    making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.    making a statement, explaining to Plaintiffs and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

422.    The material representation(s) to Plaintiffs were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

423.    When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

424.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted or relied upon by Plaintiffs or their parents, such that Plaintiffs:

a.    Should believe that the "treatments" were in fact legitimate medical "treatments;"

b. Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c. Should not believe that they had been sexually assaulted;

d. Should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

e. Should continue the "treatment[s]" so that he could continue to sexually assault them;

f. Should not question and/or report the conduct to appropriate authorities; and

g. Should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU.

425. Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

a. reasonably believed that the "treatments" were in fact "treatments;"

b. reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c. reasonably did not believe that they had been sexually assaulted;

d. believed that they should continue the "treatment[s];"

e. did not believe that they should question and/or report the conduct to appropriate authorities; and,

f. did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants.

426. Plaintiffs thereby suffered injury, in that Plaintiffs:

a. could not stop the sexual assault;

b. continued to undergo the "treatment[s]" and sexual assaults;

c. and suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will

continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

427. Concealing the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

a. making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal or anal penetration;

b. making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c. making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d. making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e. making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f. making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g. making the statement that the position of his hand was in an appropriate place—when it was not—while he was digitally penetrating Plaintiffs, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

428.    Concealing the fraud by affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a.    positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b.    dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

    c.    prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

    d.    did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

    e.    did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

    f.    gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

429.    The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

430.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his negligence is imputed to Defendant MSU.

431.    At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

432.   Plaintiffs did not know, could not have reasonably known, and were reasonably unaware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or sometime thereafter, for the following reasons among others:

   a.   Plaintiffs reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

   b.   Plaintiffs were minors and/or young females at the time of the assaults and "treatments;"

   c.   Plaintiffs did not know what a legitimate and appropriately performed intra-vaginal or intra-anal/rectal treatment was like because they had never experienced and/or had an intra-vaginal or intra-anal/rectal treatment before;

   d.   Plaintiffs had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

   e.   Plaintiffs did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

   f.   Plaintiffs had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

g. Plaintiffs had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h. Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiffs to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i. Plaintiffs could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j. In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k. Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l. Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m. Plaintiffs were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n. Plaintiffs trusted Defendant Nassar due to his notoriety and reputation;

o. Plaintiffs trusted Defendant Nassar because he groomed them to believe that his "treatments" were legitimate;

p. Plaintiffs trusted and felt that Defendant Nassar was a friend because at appointments he gave Plaintiffs gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust;

q. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of the civil justice system;

r. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of any remedy at law;

s. Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t. Plaintiffs were never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u.  Plaintiffs were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate;

v.  Plaintiffs were minors and young athletes, therefore they were easily suggestible; and,

w.  Plaintiffs had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar.

**B.  THE MSU DEFENDANTS**

433.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

434.  Plaintiffs hereby allege that Defendant MSU committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant MSU at the time his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

a.  making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.  making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.  making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.  making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.  making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.      making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.      making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

435.    The material representation(s) to Plaintiffs were false in that Defendant Nassar was actually performing acts for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

436.    When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist;

437.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.      Should believe that the "treatments" were in fact "treatments;"

b.      Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.      Should not believe that they had been sexually assaulted;

d.      Should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

e.      Should continue the "treatment[s]" so that he could continue to sexually assault them;

f.      Should not question and/or report the conduct to appropriate authorities; and,

g.      Should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU.

438.    Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

a. Reasonably believed that the "treatments" were in fact "treatments;"

b. Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c. Reasonably did not believe that they had been sexually assaulted;

d. Believed that they should continue the "treatment[s];"

e. Did not believe that they should question and/or report the conduct to appropriate authorities; and,

f. Did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

439. Plaintiffs thereby suffered injury, in that Plaintiffs:

a. Could not stop the sexual assault;

b. Continued to undergo the "treatment[s]" and sexual assaults; and,

c. Suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

440. Defendant Nassar in concealing the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

    a.   making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.   making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.   making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.   making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

    f.   making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

    g.   making a statement, explaining to Plaintiffs and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

441.   Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a.  positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b.  dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

    c.  prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

    d.  did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

    e.  did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

    f.  gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

442.  Defendant MSU's sports medicine trainers, trainers, employees, staff, managers, supervisors, directors, agents, apparent agents, and/or servants made material representation(s) to Plaintiffs involving a past or existing fact by making statements that:

    a.  Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.  Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.  Defendant Nassar's conduct was "not sexual abuse,"

d.  Defendant Nassar was a "world-renowned doctor;" and,

e.  Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure."

443.  The material representation(s) to Plaintiffs were false, in that the MSU Defendants had previously received strikingly similar complaints of abuse by Defendant Nassar from other patients, students, and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

444.  When the MSU Defendants made the material representation(s), they knew that they were false and/or made the material representation(s) recklessly, without any knowledge of their truth and as a positive assertion, in that they knew that Defendant MSU had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

445.  The MSU Defendants made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.  should believe that the "treatments" were in fact "treatments;"

b.  should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.  should not believe that they had been sexually assaulted;

d.      should not question and/or report the conduct to other authorities; and,

e.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or the MSU Defendants.

446.   Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that they had been sexually assaulted;

d.      reasonably believed that they should continue the "treatment[s];"

e.      did not believe that they should question and/or report the conduct to appropriate authorities; and,

f.      did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

447.   Plaintiffs thereby suffered injury, in that Plaintiffs:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatment[s]" and sexual assaults; and,

c.      suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

448.   The MSU Defendants concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made a material representation(s) to Plaintiffs involving a past or existing fact by:

a.   making the statement that Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.   making the statement that Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.   making the statement that Defendant Nassar's conduct was "not sexual abuse," that he was a "world-renowned doctor;" and,

d.   making the statement that Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

449.   The MSU Defendants concealed the fraud by affirmative acts that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

a.   ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Defendant Nassar's "treatments;"

b.   did not create a policy to require adults, parents, chaperones, guardians, and/or caregivers presence during an examination of a minor or female by a physician; and,

     c.      did not enforce the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room;

450.    Plaintiffs did not know, could not have reasonably known, and were reasonably unaware of a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or shortly thereafter, for the following reasons among others:

     a.      Plaintiffs reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

     b.      Plaintiffs were minors and/or young females at the time of the assaults and "treatments;"

     c.      Plaintiffs did not know what a legitimate and appropriately performed intra-vaginal treatment was like because they had never experienced and/or had an intra-vaginal treatment before;

     d.      Plaintiffs had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

     e.      Plaintiffs did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

     f.      Plaintiffs had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding

recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology to name a few;

g.    Plaintiffs had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.    Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiffs to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.    Plaintiffs could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j.    In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiffs

that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k.  Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l.  Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m.  Plaintiffs were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n.  Plaintiffs trusted Defendant Nassar due to his notoriety and reputation;

o.  Plaintiffs trusted Defendant Nassar because he groomed them to believe that his "treatments" were in fact legitimate "treatments;"

p.  Plaintiffs trusted and felt that Defendant Nassar was a friend because he gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust;

q.  Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of the civil justice system;

r.  Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of any remedy at law;

s.  Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been

sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t.     Plaintiffs were never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u.     Plaintiffs were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate;

v.     Plaintiffs were minors and young athletes, therefore they were easily suggestible;

w.     Plaintiffs had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

x.     Plaintiffs reasonably relied on the Fraud committed by Defendant MSU by their material representations and concealment of the true nature of Defendant Nassar's "treatments[s]"and his actions;

y.     Plaintiffs trusted Defendant MSU that they would protect Plaintiffs from harm and not hire, employee, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatment[s]," engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

z.     Plaintiffs were never told by Defendant MSU that Defendant Nassar's conduct and "treatment[s]" were inappropriate and sexual assault, to the contrary Plaintiffs were told that Defendant Nassar's conduct and "treatment[s]" were appropriate and

legitimate "treatment[s]," "not sexual abuse," "medically appropriate," and "[n]ot of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing" and that Plaintiffs, because of their age and inexperience with intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exams, "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure;"

aa. Plaintiffs reasonably relied on Defendant MSU to protect them and Defendant MSU's statements; and,

bb. Plaintiffs were compelled by Defendant MSU to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate.

451. The actions and inactions of the MSU Defendants and Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

452. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant MSU.

453. The actions and inactions of the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of the MSU Defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

454. At all times pertinent to this action, the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of Defendant MSU were agents, apparent agents, servants, and employees of Defendant MSU and operated within the scope of their employment and their Fraudulent Concealment is imputed to Defendant MSU.

455. At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

C.      **DEFENDANT USA GYMNASTICS**

456.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

457.    Plaintiffs incorporate by reference the Fraud claims made below and hereby allege that Defendant USAG committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant USAG at the time his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

    a.      making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.      making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.      making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.      making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.      making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

    f.      making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

    g.      making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiffs, all of which were made contemporaneously and/or

shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

458. The material representation(s) to Plaintiffs by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

459. When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist;

460. Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.      should believe that the "treatments" were in fact "treatments;"

b.      should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.      should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

d.      should continue the "treatment[s]" so that he could continue to sexually assault them;

e.      should not question and/or report the conduct to appropriate authorities; and,

f.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant USAG.

461. Plaintiffs acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiffs:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that they had been sexually assaulted;

d.      believed that they should continue the "treatment[s];"

e.     did not believe that they should question and/or report the conduct to appropriate authorities; and did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant USAG.

462.    Plaintiffs thereby suffered injury, in that Plaintiffs:

a.     could not stop the sexual assault;

b.     continued to undergo the "treatment[s]" and sexual assaults; and,

c.     suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

463.    Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

a.     making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.     making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.      making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.      making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.      making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.      making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.      making a statement, explaining to Plaintiffs and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

464.   Defendant Nassar concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.      positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b.      dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c.      prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

     d.     did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

     e.     did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

     f.     gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

465.    The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

466.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant USAG.

467.    At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

### D.    DEFENDANT TWISTARS

468.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

469.    Plaintiffs incorporate by reference the Fraud claims made below and hereby allege that Defendant Twistars committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant Twistars at the time his

sexual assaults occurred by Defendant Nassar making material representation(s) to Plaintiffs involving a past or existing fact by:

a.    making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.    making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.    making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.    making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.    making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.    making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.    making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place when it was not and while he was digitally penetrating Plaintiffs, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

470.   The material representation(s) to Plaintiffs by Defendant Nassar were false in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

471.   When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

472.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs such that Plaintiffs should:

     a.     believe that the "treatments" were in fact "treatments," should believe that the "treatment[s]" were proper, appropriate, and legitimate;

     b.     not believe that they had been sexually assaulted so that Defendant Nassar could prevent discovery of his sexual assaults;

     c.     continue the "treatment[s]" so that Defendant Nassar could continue to sexually assault them;

     d.     not question and/or report the conduct to appropriate authorities; and,

     e.     not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar, Defendant USAG, and/or Defendant Twistars.

473.    Plaintiffs acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiffs:

     a.     reasonably believed that the "treatments" were in fact "treatments;"

     b.     reasonably believed that the "treatments" were proper, appropriate, and legitimate;

     c.     reasonably did not believe that they had been sexually assaulted;

     d.     believed that they should continue the "treatment[s];"

     e.     did not believe that they should question and/or report the conduct to appropriate authorities; and,

     f.     did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar, Defendant USAG, and/or Defendant Twistars.

474.    Plaintiffs thereby suffered injury, in that Plaintiffs could not stop the sexual assault; continued to undergo the "treatment[s]" and sexual assaults; and suffered discomfort, bleeding, urinary

tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

475. Defendant Nassar concealing the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

   a. making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

   b. making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

   c. making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

   d. making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

   e. making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

   f. making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

   g. making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was

digitally penetrating Plaintiff, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

476. Defendant Nassar concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.  positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b.  dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c.  prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

d.  did not abide by or follow the standard of care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

e.  did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver;

f.  did not abide by or follow Defendant Twistars' Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was

a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

g.  gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

477.  The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

478.  At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant Twistars and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant Twistars.

479.  At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## VII.  CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

### A.  COUNT ONE

#### VIOLATIONS OF TITLE IX
#### 20 U.S.C. §1681(a), *et seq.*
#### ALL PLAINTIFFS AGAINST DEFENDANTS MSU AND MSU TRUSTEES

480.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

481.  Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"[27]

482.  Plaintiffs are "persons" under the Title IX statutory language.

483.  Defendant MSU receives federal financial assistance for its education program and is therefore

---

[27] U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."). Available at https://www2.ed.gov/about/offices/list /ocr/letters/colleague-201104.pdf. Last accessed, January 5, 2017.

subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

484.  Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

485.  The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.[28]

486.  Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment to students, athletes, and the public.

487.  Defendant Nassar's conduct and actions toward Plaintiffs, that being nonconsensual digital vaginal and anal penetration, touching of Plaintiffs vaginal area, and touching of Plaintiffs breasts constitutes sex discrimination under Title IX.

488.  As early as 1999 and/or 2000, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

489.  Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation by a student athlete in or around 1999 and by Tiffany Thomas Lopez in 2000 on more than one occasion.

490.  The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following the complaints of sexual assault, abuse, and molestation in or around 1999 and/or 2000.

491.  The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct when a victim reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast

---

[28] U.S. Dept. of Ed., Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence, Apr. 29, 2014, at 1, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

and vaginal area, and he became sexually aroused.[29]

492.    The victim reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

   a.        Defendant Nassar was sexually aroused while touching her;

   b.        The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

493.    Three months after initiating an investigation, in July 2014, the victim's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[30]

494.    Following the investigation, upon information and belief, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[31]

495.    The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge that Defendant Nassar posed a substantial risk of additional sexual abuse of the females whom he had unfettered access.

496.    After the 2014 complaints Defendant Nassar continued to sexually assault, abuse, and molest individuals, including but not limited to Plaintiff Jane Y.A. Doe.

497.    The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

---

[29] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/, last accessed January 5, 2017.
[30] *Id.*
[31] *Id.*

a.  failing to investigate and address the prior allegations as required by Title IX;

b.  failing to adequately investigate and address the 2014 complaint regarding Defendant Nassar's conduct; and,

c.  failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

498.  The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

499.  The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

a.  A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

b.  That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.[32]

500.  The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

501.  Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to

---

[32] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf. Last accessed January 4, 2017.

Defendant Nassar's sexual assaults and sex-based harassment of Plaintiffs on and off school premises.

502.  The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiffs to further harassment as well as a sexually hostile environment—effectively denying them all access to educational opportunities at MSU, including medical care.

503.  As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### B.    COUNT TWO

### VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS, DEFENDANT NASSAR

504.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

505.  Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

506.  Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

507.  At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

508. The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

509. The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

510. As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

511. The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

512. Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event. . . "

513. Defendant MSU's aforementioned internal policies were violated in or around 1999 when a student athlete reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and a coach and no action was taken to address her complaints.

514.   Defendant MSU's aforementioned internal policies were violated in 2000 when Tiffany Thomas Lopez reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and no action was taken to address her complaints.

515.   The MSU Defendants' failure to address the 1999 and 2000 complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

516.   Additionally, the MSU Defendant's failure to properly address the 2014 complaint regarding Defendant Nassar's conduct also led to others being victimized, sexually assaulted, abused and molested by Defendant Nassar.

517.   Ultimately, Defendants failed to adequately and properly investigate the complaints of Plaintiffs or other similarly-situated individuals including but not limited to failing to:

   a.   perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiffs after receiving complaints in 1999 and 2000;

   b.   thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

   c.   recognize sexual assault when reported in 2014 and permitting University officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and

   d.   ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

518.   As indicated in the U.S. Department of Education Office of Civil Rights report,[33] the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiffs.

---

[33] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

519. Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

520. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

521. The MSU Defendants are also liable to Plaintiffs under 42 U.S.C. §1983 for maintaining customs, policies, and practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

522. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

523. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### C.     COUNT THREE

### FAILURE TO TRAIN AND SUPERVISE
### 42 U.S.C. § 1983
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS

524.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

525.    The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

526.    The MSU Defendants failed to train and supervise its employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

   a.     Perceive, report, and stop inappropriate sexual conduct on campus;

   b.     Provide diligent supervision over student-athletes and other individuals;

   c.     Report suspected incidents of sexual abuse or sexual assault;

   d.     Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

   e.     Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

   f.     Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

527.    The above list of duties is not exhaustive.

528.    The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiffs' rights.

529.    As a result, the MSU Defendants deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

530.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**D.    COUNT FOUR**

**GROSS NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**
**AND DEFENDANT NASSAR**

531.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

532.    The MSU Defendants owed Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

533.    Defendant Nassar owed Plaintiffs a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

534.    By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

535.    The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for

whether an injury would result to Plaintiffs.

536. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

537. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

538. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

539. The MSU Defendants breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

540. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

E.    **COUNT FIVE**

**NEGLIGENCE**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**
**AND DEFENDANT NASSAR**

541. Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

542.    The MSU Defendants owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

543.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

544.    Defendant Nassar owed Plaintiffs a duty of ordinary care.

545.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

546.    The MSU Defendants had notice through its own employees, agents, and/or representatives as early as 1999, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

547.    The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

548.    The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

549.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

550.    As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations

of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**F.      COUNT SIX**

**VICARIOUS LIABILITY**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

551.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

552.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

553.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

554.   The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

555.   Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[34]

556.   The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

---

[34] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

557.   As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

G.     **COUNT SEVEN**

**EXPRESS/IMPLIED AGENCY**
**ALL PLAINTIFFS AGAINST MSU DEFENDANTS**

558.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

559.   An agent is a person who is authorized by another to act on its behalf.

560.   The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

561.   On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

562.   Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

563.   Plaintiffs were injured because they relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

564.   As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course

of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### H.     COUNT EIGHT

### NEGLIGENT SUPERVISION
### ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS

565.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

566.   The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiffs.

567.   It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

568.   The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Dean Strampel or Dr. Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

569.   The MSU Defendants breached their duty to provide reasonable supervision of Defendant

Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

570. The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

571. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

572. As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

I.      **COUNT NINE**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

573. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

574. The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

575. As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in

response.

576.    The MSU Defendants knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

577.    The MSU Defendants had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

578.    The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiffs.

579.    The MSU Defendants breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

580.    The MSU Defendants breached its duties to protect Plaintiffs by failing to:

   a.    respond to allegations of sexual assault, abuse, and molestation;

   b.    detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

   c.    investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

581.    The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiffs' rights.

582.    The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

583.    As a direct and/or proximate result of the MSU Defendants negligent failure to warn or protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**J.      COUNT TEN**

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE
ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

584.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

585.    The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiffs and other minors from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

586.    The MSU Defendants failed to implement reasonable safeguards to:

a.      Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

b.      Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

587.    As a direct and/or proximate result of the MSU Defendants' negligent failure to train or educate, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

K.      **COUNT ELEVEN**

**NEGLIGENT RETENTION**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

588.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

589.    The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

590.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

591.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

592.    The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs and an unknown number of other individuals.

593.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

594.    As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily

activities and obtaining the full enjoyment of life; and have sustained and continue to sustain loss of earnings and earning capacity.

**L.     COUNT TWELVE**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL PLAINTIFFS AGAINST THE MSU DEFENDANTS**

595.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

596.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

597.    A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

598.    The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

599.    The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

600.    A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

601.    The MSU Defendants' conduct as described above was intentional and/or reckless.

602.    As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**M.**   **COUNT THIRTEEN**

**FRAUD AND MISREPRESENTATION**
**ALL PLAINTIFFS AGAINST MSU DEFENDANTS**

603.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

604.   From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician.

605.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

606.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

607.   As of 1999 and 2000, the MSU Defendants knew their representations of Defendant Nassar were false as at least one student athlete in 1999 and Tiffany Thomas Lopez had complained of Defendant Nassar's conduct to MSU representatives.

608.   Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address the 1999 and 2000 complaints.

609.   The MSU Defendants continued to hold Defendant Nassar out as a competent and safe

physician.

610.     Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiffs and an unknown number of other individuals.[35]

611.     Between the time of the 2014 complaint and September 2016, the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

612.     Plaintiffs relied on the assertions of the MSU Defendants and several Plaintiffs continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

613.     Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

614.     As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

---

[35] *See* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf. Last accessed January 4, 2017.

VIII.       CLAIMS AGAINST USA GYMNASTICS

   A.       COUNT FOURTEEN

GROSS NEGLIGENCE
PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE;
JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;
JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE
AGAINST DEFENDANT USAG AND DEFENDANT NASSAR

615.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous
        paragraphs.

616.    Defendant USAG owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane
        L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane
        Y.A. Doe, and Jane S.J. Doe a duty to use due care to ensure their safety and freedom from sexual
        assault, abuse, and molestation while interacting with their employees, representatives, and/or
        agents.

617.    The above-named Plaintiffs are or were members of USAG, participated in USAG sanctioned
        events, and were knowledgeable of and in some cases referred to Defendant Nassar through
        USAG affiliations.

618.    Defendant Nassar owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane
        L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane
        Y.A. Doe, and Jane S.J. Doe a duty to use due care in his capacity as an employee, representative,
        and/or agent of Defendant USAG.

619.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent,
        and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship
        between Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane
        H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W, Jane Y.A. Doe, and Jane
        S.J. Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a

duty to use due care.

620. Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe.

621. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe.

622. Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe's safety.

623. Defendant USAG's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe.

624. Defendant USAG breached duties owed to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe and were grossly negligent when they conducted themselves by actions described above, including but not limited to their failure to notify MSU about the reasons for Nassar's separation from USAG and more broadly the issues surrounding

sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

625.    As a direct and/or proximate result of Defendant USAG'S actions and/or inactions, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B.    COUNT FIFTEEN**

**NEGLIGENCE**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE;**
**JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;**
**JANE M.W. DOE; JANE A.S. DOE; JANE S.J. DOE**
**AGAINST DEFENDANT USAG AND DEFENDANT NASSAR**

626.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

627.    Defendant USAG owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

628.    Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe,

Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe as members of Defendant USAG had a reasonable expectation that Defendant USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

629. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, and Jane Y.A. Doe, and Jane S.J. Doe and Defendant Nassar was created, resulting in Defendant Nassar owing the aforementioned Plaintiffs a duty to use ordinary care.

630. Defendant Nassar owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe a duty of ordinary care in carrying out medical treatment.

631. Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

632. Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

633. Defendant USAG's failure to inform Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

634. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe was a breach of the

duty to use ordinary care.

635.　As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## C.　COUNT SIXTEEN

**VICARIOUS LIABILITY**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE;**
**JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;**
**JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE**
**AGAINST DEFENDANT USAG**

636.　Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

637.　Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

638.　Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

639.　Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.[36]

---

[36] For example, *see*, https://usagym.org/pages/post.html?PostID=14677&prog=h.

640. Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

641. Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

642. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**D. COUNT SEVENTEEN**

**EXPRESS/IMPLIED AGENCY**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE;**
**JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;**
**JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE**
**AGAINST DEFENDANT USAG**

643. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

644. An agent is a person who is authorized by another to act on its behalf.

645. Defendant USAG intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

646.    On the basis of those representations, Plaintiffs reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

647.    Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with Defendant USAG.

648.    Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe were injured because they relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care.

649.    As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### E.   COUNT EIGHTEEN

**NEGLIGENT SUPERVISION**
**PLAINTIFFS LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE; JANE L.A.**
**DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;**
**JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE**
**AGAINST DEFENDANT USAG**

650.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

651.   Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe.

652.   It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

653.   Defendant USAG by and through its employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

654.   Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe.

655.   The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of

his employment, agency and/or representation of Defendant USAG.

656.   Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe with impunity.

657.   As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

F.   **COUNT NINETEEN**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE;**
**JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;**
**JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE**
**AGAINST DEFENDANT USAG**

658.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

659.   Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper

procedures were not taken by Defendant USAG.

660. Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe or those in Plaintiffs' situation.

661. Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

662. Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

663. Defendant USAG had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

664. The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe.

665. Defendant USAG breached said duty by failing to warn Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe and/or by failing to take reasonable steps to protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe from Defendant Nassar.

666. Defendant USAG breached its duties to protect P Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T.

Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

667. Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe's rights.

668. Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe from Defendant Nassar's conduct.

669. As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### G. COUNT TWENTY

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE;**
**JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;**
**JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE**
**AGAINST DEFENDANT USAG**

670. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

671. Defendant USAG breached its duty to take reasonable protective measures to protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe and other individuals from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

672. Defendant USAG failed to implement reasonable safeguards to:

a. Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

b. Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiffs and other young athletes.

673. As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane A.Y Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain

loss of earnings and earning capacity.

### H.    COUNT TWENTY-ONE

### NEGLIGENT RETENTION
### PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE; JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE
### AGAINST DEFENDANT USAG

674.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

675.    Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

676.    Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

677.    Defendant USAG was negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

678.    Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe as well as an unknown number of other individuals.

679.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane

H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe as well as other minors and young adults.

680. As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## I. COUNT TWENTY-TWO

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE; JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE
### AGAINST DEFENDANT USAG

681. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

682. Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

683. A reasonable person would not expect Defendant USAG to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

684. Defendant USAG held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

685.    Defendant USAG protected Defendant Nassar in part to bolster its national and international reputation in the gymnastics community.

686.    A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

687.    Defendant USAG's conduct as described above was intentional and/or reckless.

688.    As a direct and/or proximate result of Defendant USAG's conduct, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

J.    **COUNT TWENTY-THREE**

**FRAUD AND MISREPRESENTATION**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE; JANE B.M. DOE;**
**JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE B.A. DOE; JANE H.T. DOE;**
**JANE M.W. DOE; JANE Y.A. DOE; JANE S.J. DOE**
**AGAINST DEFENDANT USAG**

689.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

690.    From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe and the public

that Defendant Nassar was a competent, ethical, and safe physician.

691. By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

692. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

693. Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe, the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiffs and others.

694. Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe relied on the assertions of Defendant USAG and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

695. Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe were subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

696. As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations,

Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, Jane B.A. Doe, Jane H.T. Doe, Jane M.W. Doe, Jane Y.A. Doe, and Jane S.J. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

IX.     **CLAIMS AGAINST TWISTARS**

K.      **COUNT TWENTY-FOUR**

**GROSS NEGLIGENCE**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE;**
**JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE H.T. DOE**
**AGAINST DEFENDANT TWISTARS AND DEFENDANT NASSAR**

697.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

698.    Defendant Twistars owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

699.    Defendant Nassar owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe a duty to use due care as an employee, representative, and/or agent of Defendant Twistars.

700.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane

H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

701. Given known sexual abuse which has taken place in youth sports including gymnastics and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars not only referred athletes to Defendant Nassar but also failed to adequately supervise Defendant Nassar. Defendant Twistars' action were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe.

702. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe.

703. Defendant Twistars's conduct demonstrated a willful disregard for precautions to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe's safety.

704. Defendant Twistars's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe.

705. Defendant Twistars breached duties owed to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and was grossly negligent when it conducted itself by actions described above, said acts having been committed

with reckless disregard for Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

706.    As a direct and/or proximate result of Defendant Twistars's actions and/or inactions, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### L.    COUNT TWENTY-FIVE

**NEGLIGENCE**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE;**
**JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE H.T. DOE**
**AGAINST DEFENDANT TWISTARS AND DEFENDANT NASSAR**

707.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

708.    In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Mr. Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

709.    Despite being informed of Defendant Nassar's conduct, Mr. Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

710.    Mr. Geddert owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe a duty of ordinary care to ensure their

safety and freedom from sexual assault, abuse, and molestation.

711. In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Mr. Geddert breached the duty of ordinary care to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and the public.

712. Defendant Twistars breached the duty of ordinary care to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and the public in failing to investigate the 1998 allegations, which were made to Mr. Geddert.

713. Defendant Twistars breached the duty of ordinary care to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and the public by failing to report the 1998 allegations, which were made to Mr. Geddert, to law enforcement.

714. Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe, as members of Defendant Twistars, in taking the recommendation of Mr. Geddert to seek medical treatment from Defendant Nassar had a reasonable expectation that Defendant Nassar would carry out medical treatment without subjecting them to sexual assault, abuse, or molestation.

715. By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

716. Defendant Nassar owed Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe a duty of ordinary care in carrying out medical treatment at Defendant Twistars' facilities.

717. Defendant Twistars's failure to adequately train and supervise Defendant Nassar while he was at

their facility breached the duty of ordinary care.

718. Defendant Nassar's conduct at Defendant Twistars's facility, in sexually assaulting, abusing, and molesting Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

719. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

M.     COUNT TWENTY-SIX

EXPRESS/IMPLIED AGENCY
PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE;
JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE H.T. DOE
AGAINST DEFENDANT TWISTARS

720. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

721. An agent is a person who is authorized by another to act on its behalf.

722. Defendant Twistars intentionally or negligently made representations that Defendant Nassar was its employee, agent, and/or representative.

723. On the basis of those representations, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant

Twistars.

724. Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above.

725. Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe were injured because they relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

726. As a proximate cause of Defendant Nassar's negligence carried out through his employment, agency, and or representation of Defendant Twistars Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### N.    COUNT TWENTY-SEVEN

**NEGLIGENT SUPERVISION**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE;**
**JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE H.T. DOE**
**AGAINST DEFENDANT TWISTARS**

727. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

728. Defendant Twistars each had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female athletes including

Plaintiffs.

729. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe, unless properly supervised.

730. Defendant Twistars by and through their employees, agents, managers, and/or assigns, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and due to the 1998 complaint made to Mr. Geddert of the nonconsensual sexual touching during "treatment."

731. Defendant Twistars breached its duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe.

732. The aforementioned sexual abuse occurred while Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and Defendant Nassar were on the premises of Defendant Twistars, and while Defendant Nassar was acting in the course of his employment, agency, or representation of Defendant Twistars.

733. Defendant Twistars tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe with impunity.

734. As a direct and/or proximate result of Defendant Twistars' negligent supervision, Plaintiffs

Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**O.   COUNT TWENTY-EIGHT**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE;**
**JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE H.T. DOE**
**AGAINST DEFENDANT TWISTARS**

735. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

736. Defendant Twistars knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe or those in Plaintiffs' situation.

737. As early as 1998, Defendant Twistars, by a complaint made to its owner/employee/agent/representative John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

738. Defendant Twistars knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

739. Defendant Twistars had a duty to warn or protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

740.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, an agent/representative/employee of Defendant Twistars and Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe.

741.   Defendant Twistars breached said duty by failing to warn Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and/or by failing to take reasonable steps to protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe from Defendant Nassar.

742.   Defendant Twistars breached its duties to protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

743.   Defendant Twistars breached its duties to protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe by failing to investigate Defendant Nassar, and adjudicate and suspend and/or ban Defendant Nassar from Twistars-sanctioned events.

744.   Defendant Twistars failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician with their organization, resulting in violations of Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe.

745.   Defendant Twistars willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M.

Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe from Defendant Nassar's conduct.

746. As a direct and/or proximate result of Defendant Twistars' negligent failure to warn or protect, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## P.     COUNT TWENTY-NINE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE;
### JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE H.T. DOE
### AGAINST DEFENDANT TWISTARS

747. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

748. Defendant Twistars allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults at its facility and other places.

749. A reasonable person would not expect Defendant Twistars to tolerate or permit its employee, agent, or representative to carry out sexual assault, abuse, or molestation.

750. Defendant Twistars held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiffs and others to respect and trust Defendant Nassar, seek his services, and to not question his methods or motives.

751. Defendant Twistars protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community, and Twistars's reputation in the gymnastics

community.

752. A reasonable person would not expect Defendant Twistars to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation on its premises and at its facility.

753. Defendant Twistars's conduct as described above was intentional and/or reckless.

754. As a result of Defendant Twistars's conduct, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**Q. COUNT THIRTY**

**FRAUD AND MISREPRESENTATION**
**PLAINTIFFS LINDSEY LEMKE; JANE L.B. DOE; JANE A.P. DOE;**
**JANE B.M. DOE; JANE L.A. DOE; JANE H.B. DOE; JANE R.E. DOE; JANE H.T. DOE**
**AGAINST DEFENDANT TWISTARS**

755. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

756. From approximately 1996 to September 2016, Defendant Twistars represented to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and the public that Defendant Nassar was a competent, ethical, and safe physician.

757. By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars represented

to Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and the public need not worry about being harmed by Defendant Nassar.

758.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe and an unknown number of individuals, at times at Defendant Twistars' facility.

759.   As early as 1998, Defendant Twistars knew their representations of Defendant Nassar were false as Defendant Twistars received a complaint of Defendant Nassar's conduct.

760.   Between the time of the 1998 complaint and September 2016, Defendant Twistars continued to hold Defendant Nassar out as a competent and safe physician.

761.   Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe relied on the assertions of Defendant Twistars and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

762.   Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe were subjected to sexual assault, abuse, and molestation as a result of Defendant Twistars's fraudulent misrepresentations regarding Defendant Nassar.

763.   As a direct and/or proximate result of Defendant Twistars's fraudulent misrepresentations, Plaintiffs Lemke, Jane L.B. Doe, Jane A.P. Doe, Jane B.M. Doe, Jane L.A. Doe, Jane H.B. Doe, Jane R.E. Doe, and Jane H.T. Doe suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## X.  CLAIMS AGAINST NASSAR

### A.  COUNT THIRTY-ONE

#### ASSAULT & BATTERY
#### ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR

764.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

765.  The acts committed by Defendant Nassar against Plaintiffs described herein constitute assault and battery, actionable under the laws of Michigan.

766.  Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the bodies of Plaintiffs.

767.  Specifically, Defendant Nassar committed acts which caused injury to Plaintiffs by subjecting them to an imminent battery and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiffs to an immediate, intentional, offensive and harmful touching.

768.  Defendant Nassar assaulted and battered Plaintiffs by nonconsensual and unwanted digital vaginal penetration, digital anal penetration, and touching some of Plaintiffs' breasts without notice or explanation of the "treatment."

769.  Plaintiffs did not consent to the contact, which caused injury, damage, loss, and/or harm.

770.  As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional

distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B.    COUNT THIRTY-TWO**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR**

771.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

772.    Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiffs, and an unknown number of other individuals, minors, and young adults.

773.    Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

774.    A reasonable person would not expect their physician to sexually assault, abuse, or molest them, and to do so under the guise of medical "treatment" without proper notice or explanation, and without giving the patient the opportunity to refuse "treatment" of that nature.

775.    Defendant Nassar's conduct was intentional or reckless as he repeatedly sexually assaulted, abused, and molested Plaintiffs over several years, from approximately 1996 to 2016.

776.    Defendant Nassar's conduct has caused and continues to cause Plaintiffs to suffer emotional and psychological distress.

777.    As a direct and/or proximate result of Defendant Nassar's outrageous conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional

distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

C.      **COUNT THIRTY-THREE**

**FRAUD AND MISREPRENSETATION**
**ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR**

778.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

779.    From approximately 1996 to September 2016, Defendant Nassar represented to Plaintiffs and the public that he was a competent, ethical, and safe physician.

780.    By representing that he was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Nassar represented to Plaintiffs the public that Defendant Nassar he was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

781.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of individuals at MSU, Twistars' facilities, USAG meets, Defendant Nassar's home, and other locations.

782.    Specifically, Defendant Nassar's false representations include but are not limited to the following:

a.      making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.      making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.      making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.      making the statement, explaining, that his acts and/or conduct was doing a "breast

exam;"

e.    making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.    making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.    making a statement, explaining to a plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating the plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

783.    The material representation(s) to Plaintiffs were false, in that Defendant Nassar was actually engaging in conduct for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

784.    Plaintiffs relied on the assertions of Defendant Nassar and several Plaintiffs continued to seek treatment of Defendant Nassar even after Defendant Nassar became aware of concerns and complaints of his "treatment."

785.    When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

786.    Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted and/or relied upon by Plaintiffs such that Plaintiffs:

a.    should believe that the "treatments" were in fact "treatments;"

b.    should believe that the "treatment[s]" were proper, appropriate, and legitimate; should not believe that they had been sexually assaulted;

c.    should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults; should continue the "treatment[s]" so that he could continue to sexually assault them; should not question and/or report the conduct to

        appropriate authorities; and,

    d.      should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU.

787.    Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a.      positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b.      dismissed a medical professional from the room, during an examination of a plaintiff of whom he was digitally penetrating, who questioned the placement of his hands;

    c.      prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during some examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

    d.      did not abide by or follow the standard of care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

    e.      did not abide by or follow restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

    f.      gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

788.    The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraud.

789.    Between the times of the 1998 complaint to Defendant Twistars, the 1999 complaint to MSU

coaches and trainers, the 2000 complaint to MSU trainers, the 2004 complaint to Meridian Township Police, the 2014 Complaint to MSU officials, and September 2016 when he was fired, Defendant Nassar continued to hold himself out as a competent and safe physician.

790.   Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant Nassar's' fraudulent misrepresentations regarding Defendant Nassar.

791.   At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants and operated within the scope of his employment and his negligence is imputed to the MSU Defendants.

792.   At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

793.   As a direct and/or proximate result of Defendant Nassar's fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

## XI.   DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

794.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

795.   As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation,

and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity.

796.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

797.    In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

798.    The amount in controversy for each Plaintiff exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiffs request this Court and the finder of fact to enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)    Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)    Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)    Reasonable attorney fees, interest, and costs; and,

d) Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

**Respectfully Submitted,**

Dated: June 15, 2017

/s/ James White
**James White (P56946)**
White Law PLLC
Attorney for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: jameswhite@whitelawpllc.com

Dated: June 15, 2017

/s/ John W. Fraser
**John W. Fraser (P79908)**
White Law PLLC
Attorney for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: johnfraser@whitelawpllc.com

Dated: June 15, 2017

/s/ Alexander S. Rusek
**Alexander S. Rusek (P77581)**
White Law PLLC
Attorney for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: alexrusek@whitelawpllc.com

## RELIANCE UPON JURY DEMAND

Plaintiffs, by and through their attorneys, WHITE LAW PLLC, hereby rely on the demand

for a trial by jury previously asserted on all claims set forth above.

Dated: June 15, 2017        /s/ James White

**James White (P56946)**
White Law PLLC
Attorney for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: jameswhite@whitelawpllc.com


Dated: June 15, 2017        /s/ John W. Fraser

**John W. Fraser (P79908)**
White Law PLLC
Attorney for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: johnfraser@whitelawpllc.com


Dated: June 15, 2017        /s/ Alexander S. Rusek

**Alexander S. Rusek (P77581)**
White Law PLLC
Attorney for Plaintiffs
2549 Jolly Road, Suite 340
Okemos, Michigan 48864
Ph.: (517) 316-1195
Fax: (517) 316-1197
W: www.whitelawpllc.com
E: alexrusek@whitelawpllc.com